**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

WADE A. DRUMMOND,              :

    Petitioner,                   :

vs.                            :         CA 06-0503-BH-C

UNITED STATES OF AMERICA,      :
et al.,
                                        :

    Respondents.

**REPORT AND RECOMMENDATION**

Wade A. Drummond, a native and citizen of Jamaica ordered removed from the United States and presently being detained by the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[1] This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C.

---

[1] While petitioner is no longer in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."), he was confined in the Perry County Correctional Center when he filed the instant action and, therefore, this Court retains jurisdiction to decide this matter, *see Patel v. United States Attorney General*, 334 F.3d 1259, 1263 (11th Cir. 2003) ("Habeas jurisdiction requires that the petitioner be in 'custody.' 'Custody' is determined as of the time of the filing of the petition.").

§ 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed, without prejudice to being filed at a later date in the district of confinement, because Drummond prematurely filed the present attack upon his post-removal-period detention.

## FINDINGS OF FACT

1.    Drummond is a native and citizen of Jamaica who entered the United States on May 9, 1984 as a lawful permanent resident. (Doc. 15, Exhibits 2 & 8) On May 21, 1998, Drummond was ordered removed from the United States by an Immigration Judge and petitioner was physically removed from the United States on September 24, 1998. (Doc. 15, Exhibit 2) Thereafter, on December 11, 1998, Drummond attempted to re-enter the United States "without advanced permission[.]" (*Id.*) Accordingly, petitioner was charged with illegal reentry. (*Id.*) He was eventually convicted of attempting to reenter the United States after deportation (Doc. 15, Exhibit 8, at 2) and was sentenced to a period of seventy-seven (77) months imprisonment (Doc. 20, Affidavit of Wade Anthony Drummond, at ¶ 5)

2.    The Department of Homeland Security placed Drummond into removal proceedings by the issuance of a Notice to Appear dated September 20, 2004. (Doc. 15, Exhibit 6) Petitioner was notified that his illegal reentry

into the United States on December 11, 1998, after having been deported on September 24, 1998, made him deportable. (*See id*.)

  3.  On March 2, 2005, Immigration Judge John B. Reid ordered Drummond removed from the United States and returned to his native Jamaica. (Doc. 15, Exhibit 7)

  4.  Drummond timely appealed the Immigration Judge's March 2, 2005 decision to the Board of Immigration Appeals. (*See* Doc. 13, Declaration of Carla J. Ward, at ¶ 3 ("On March 17, 2005 an appeal of the Immigration Judge's removal order was filed with the Board of Immigration Appeals[.]")) On August 1, 2005, the Board of Immigration Appeals issued its decision affirming the Immigration Judge's determination and dismissing the appeal. (Doc. 15, Exhibit 8)

> The respondent, a native and citizen of Jamaica, appeals from the Immigration Judge's March 2, 2005, decision finding the respondent removable as charged and ineligible for relief from removal. The appeal will be dismissed.
>
> The respondent, a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident on May 9, 1984. The record reveals that on April 22, 1988, the respondent pleaded guilty to and was convicted of the Texas offense of unlawful possession of a controlled substance, cocaine[.] On December 2, 1992, the respondent pleaded guilty to and was convicted of the New York offense of criminal possession of a weapon in the third degree[.] Thereafter, the Department of Homeland Security . . . commenced removal

3

proceedings against the respondent charging him with removability under section 237(a)(2)(B) and (C) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(B), (C)[.] An Immigration Judge ordered the respondent removed from the United States to Jamaica on May 21, 1998[.] The respondent was removed from this country on September 24, 1998[.]

On December 11, 1998, the respondent attempted to re-enter this country, without advance consent from the Attorney General, by presenting a revoked resident alien card[.] The respondent was subsequently convicted of attempting to re-enter the United States after deportation[.] Thereafter, the DHS commenced removal proceedings against the respondent alleging that the respondent was removable as one inadmissible at entry both as an alien convicted of a controlled substance violation as described in section 212(a)(2)(A)(i)(II) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(II), and as an alien previously removed as described in section 212(a)(9)(A)(ii) of the Act.

The respondent on appeal challenges his removability and asserts, in part, that the first order of removal was unlawful and unfair because he was not considered for relief for which he was eligible. The respondent's arguments are without merit.

As an initial matter, the record reveals that the DHS presented clear and convincing evidence establishing the respondent's removability as charged in both proceedings[.] Turning to the issue of relief from removal, the respondent has failed to establish eligibility for both cancellation of removal and a waiver of inadmissibility under former section 212(c) of the Act. With respect to cancellation of removal, as the Immigration Judge noted, the respondent has not demonstrated the requisite 7 years of residence. Contrary to the respondent's arguments on appeal, the respondent's 1988 controlled substance conviction ended the respondent's continuous residence for cancellation purposes.

> With respect to section 212(c) relief, although it appears that the respondent may have been statutorily eligible for a waiver of inadmissibility for his 1988 controlled substance conviction before his earlier removal, such relief has not been shown to have been available for the respondent's 1992 firearms conviction. While the firearms conviction did not constitute a ground of inadmissibility that would preclude the respondent from seeking adjustment of status under section 245(a) of the Act, the record contains no evidence establishing the respondent's prima facie eligibility to pursue adjustment of status in conjunction with a 212(c) waiver for the 1988 drug conviction[.] Furthermore, as the Immigration Judge noted, the record contains evidence indicating that the respondent may have a recent (1998) aggravated felony conviction, which would not qualify for a section 212(c) waiver[.] In addition, we believe it would be inconsistent with the purpose of 8 C.F.R. § 1003.44(k) to allow the respondent to collaterally attack his prior removal in circumstances where the regulation would bar reopening of that same proceeding[.]
>
> On whole, the record supports the Immigration Judge's resolution. Accordingly, we will enter the following order.
>
> ORDER: The respondent's appeal is dismissed.

(*Id.* (internal citations & footnotes omitted)) Drummond's application for reconsideration was denied by the Board of Immigration Appeals on October 18, 2005. (Doc. 15, Exhibit 9)

> The respondent argues in his motion to reconsider that the Board erred in finding that he was ineligible for cancellation of removal under section 240A of the Immigration and Nationality Act, 8 U.S.C. § 1229b. The respondent argues that even though his period of continuous residence in the United States ended on April 22, 1988, the day he pled guilty to and was convicted of the Texas offense of unlawful possession of a

5

controlled substance, cocaine, more than 7 years have elapsed from the date he committed his crime and the issuance date of the Notice to Appear.

However, in *Matter of Mendino-Sandino*, 22 I&N 1236 (BIA 2000), the Board held that pursuant to section 240A(d)(1) of the Act, an alien may not accrue the requisite 7 years of continuous physical presence for suspension of deportation after the service of the Order to Show Cause and Notice of Hearing (Form I-221), as service of the Order to Show Cause ends continuous physical presence. Even though *Matter of Mendino-Sandino, supra*, involved an application for suspension of deportation, we conclude that it also applies to aliens in removal proceedings seeking cancellation of removal. Based upon our decision in *Matter of Mendino-Sandino, supra*, we find that the respondent cannot prove that he has resided in the United States continuously for 7 years after having been admitted in any status. He is therefore ineligible for cancellation of removal.

The respondent argues in his motion that he is eligible to seek a section 212(c) waiver of inadmissibility because he is prima facie eligible for adjustment of status consideration. The respondent has not, however, provided to the Board a copy of an approved visa petition filed on his behalf. In the absence of such, we cannot find that he is prima facie eligible to adjust his status to a lawful permanent resident of the United States. In addition, as mentioned in our August 1, 2005, decision, the respondent's December 2, 1992, conviction of the New York offense of criminal possession of a weapon in the third degree precludes him from section 212(c) consideration as relief from removal.

The respondent further argued in an amendment to his original motion to reconsider that the DHS is barred based upon res judicata for placing him in removal proceedings since he was already removed from the United States on account of his criminal convictions. We disagree. The respondent was properly removed from the United States by the DHS. That agency has

> the legal responsibility to ensure that only those who are lawfully entitled to be in this country are able to do so. The decision of the DHS to seek the respondent's removal after his reentry was proper, and was proceeded upon within the framework of the law. This aspect of the motion is denied. The DHS is also not obligated to reinstate the prior removal order, and may in its prosecutorial discretion initiate these instant proceedings. *See Matter of G-N-C*, 22 I&N Dec. 281 (BIA 1998).

(*Id.*)

      5.     "On September 1, 2005, a Petition for Review along with a Stay of Removal filed with the Second Circuit Court of Appeals, Southern District in New York, were both granted. On October 12, 2006 both the Petition for Review and the Stay of Removal were denied by the Second Circuit Court of Appeals." (Doc. 15, Exhibit 2, at 1; *see also* Doc. 11, Attached Second Circuit Order Dated October 12, 2006 ("IT IS HEREBY ORDERED that petitioner's motion to stay removal is DENIED."); Doc. 19, Attached October 13, 2006 Mandate of Second Circuit ("Petitioner, *pro se*, moves for assignment of counsel an *in forma pauperis* status. Upon due consideration, it is ORDERED that the motions are DENIED because Petitioner has not demonstrated that the appeal has 'likely merit.' . . . It is further ORDERED that all other pending motions are denied as moot and the appeal is DISMISSED because it lacks an arguable basis in fact or law."))

7

6.     Drummond filed an application for stay of deportation or removal with the Department of Homeland Security on November 6, 2006. (Doc. 15, Exhibit 1) On December 7, 2006, the U.S. Immigration and Customs Enforcement ("ICE") arm of the Department of Homeland Security denied Drummond's application. (Doc. 15, Exhibit 2, at 1-2 ("You listed the following as reasons why you filed for the Stay of Deportation or Removal form G-246 on November 6th, 2006: (1) justifiable existence, legal reasons to grant you such relief, (b) your Constitutional and Civil Rights were violated throughout these proceedings, (c) humanitarian and family reunification purposes, and (d) pending decision on your case that is currently pending before the U.S. District Court, Southern District of Alabama as being the reasons why you filed for the 'Stay of Deportation or Removal'. All the reasons you have stated above were all presented and heard before such U.S. Courts also listed above. As such, your application for Stay of Deportation or Removal is hereby denied. With no stay in effect, Immigration and Customs Enforcement is in the process of effecting your removal from the United States to Jamaica as previously ordered."))

7.     Drummond filed his petition seeking habeas corpus relief, pursuant to 28 U.S.C. § 2241, in this Court on August 28, 2006. (Doc. 1, at 1

("This litigation is submitted in good faith and its inquiry is singularly constrained to petitioner's eligibility for **IMMEDIATE RELEASE** from detention."))

## **CONCLUSIONS OF LAW**

1. In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2. In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3. 8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a)  Detention, release, and removal of aliens ordered removed**

**(1)  Removal period**

**(A)  In general**

Except as otherwise provided in this section, when

an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

### (B)   Beginning of period

The removal period begins on the **latest** of the following:

**(i)**   The date the order of removal becomes administratively final.

**(ii)**   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)**   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

### (C)   Suspension of period

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

### (2)   Detention

During the removal period, the Attorney General shall detain the alien. Under no circumstances during the

> removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To

the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

    4.    In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal and any subsequent action of the appropriate circuit court in granting such motion. *See id.*, n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000. . . . Akinwale

subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . . . Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.").

     5.    In this case, Drummond has filed his § 2241 petition prematurely. Petitioner's filing date in this instant action, August 28, 2006 (Doc. 1), came approximately forty-five (45) days prior to the date--October 12, 2006-- the Second Circuit Court of Appeals issued its order denying Drummond's stay of removal and petition for review. Therefore, in accordance with *Zadvydas* and *Akinwale*, Drummond had no period of detention prior to the filing of his § 2241 petition that can be counted toward the six-month post-removal-period of detention recognized as presumptively reasonable by the Supreme Court. In other words, not only had the six-month period not expired prior to the filing of the instant petition, it will not expire until April 10, 2007; thus, petitioner has not stated a claim for relief under 28 U.S.C. § 2241 and *Zadvydas*.

## **CONCLUSION**

For these reasons, the undersigned recommends that this Court dismiss,

without prejudice, Wade Drummond's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Drummond's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future, and in the appropriate court, when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 27th day of March, 2007.

      s/WILLIAM E. CASSADY
      **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.       *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY<br>
UNITED STATES MAGISTRATE JUDGE